UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

№ 07-CV-03906 (JFB) (ETB)

---

THEODORE STAIR, INDIVIDUALLY, THEODORE STAIR, AN OFFICER, DIRECTOR, AND SHAREHOLDER OF AMERICAN VIRGIN ENTERPRISES, LTD., DERIVATIVELY ON BEHALF OF AMERICAN VIRGIN ENTERPRISES, INC., AND THEODORE STAIR, A MEMBER OF SIRIUS DEVELOPMENT, LLC, DERIVATIVELY ON BEHALF OF SIRIUS DEVELOPMENT, LLC,

Plaintiffs,

VERSUS

RORY CALHOUN, JOHN HANRAHAN, ROBERT E. PARELLA, H. LINWOOD GILBERT, DAVID A. BORNN, DAVID A. BORNN P.C., THE BORNN FIRM P.L.L.C., AND T-REX ST. JOHN LLC,

Defendants.

---

**MEMORANDUM AND ORDER**
March 23, 2009

---

JOSEPH F. BIANCO, District Judge:

On September 18, 2007, pursuant to the laws of New York State and the U.S. Virgin Islands ("Virgin Islands"), plaintiffs (1) Theodore Stair ("Stair"), individually; (2) Theodore Stair, an officer, director, and shareholder of American Virgin Enterprises, Ltd., derivatively on behalf of American Virgin Enterprises, Ltd.;[1] and (3) Theodore Stair, a member of Sirius Development, LLC, derivatively on behalf of Sirius Development, LLC ("Sirius") (collectively, "plaintiffs") brought the instant action against two sets of defendants: (1) Rory Calhoun ("Calhoun"), John Hanrahan ("Hanrahan"), Robert E. Parella ("Parella"), H. Linwood Gilbert ("Gilbert"), and T-Rex St. John LLC ("T-Rex SJ") (collectively, the "Sirius defendants");

---

[1] The Court construes the caption of the complaint, which states that Stair brings the claim as "an officer, director and shareholder of American Virgin Enterprises, Ltd., derivatively on behalf of American Virgin Enterprises, *Inc*.," to mean "derivatively on behalf of American Virgin Enterprises, *Ltd*." (emphases added).

and (2) David A. Bornn, David A. Bornn P.C., and The Bornn Firm P.L.L.C. (collectively, the "Bornn defendants"). The complaint arises out of a proposed real estate development in the Virgin Islands and contains four causes of action: (1) pursuant to New York Business Corporation Law §§ 626 and 720, plaintiff lodges claims against Calhoun, Hanrahan, and the Bornn defendants ("Count I"); (2) pursuant to Virgin Islands Code Title 13, §§ 1410 and 2101, plaintiff lodges claims against all defendants ("Count II"); (3) pursuant to the law of common law fraud, plaintiff lodges claims against Calhoun, Hanrahan, Parella, Gilbert, and the Bornn defendants ("Count III"); and (4) plaintiff lodges an attorney malpractice claim against Calhoun, Parella, and the Bornn defendants ("Count IV").

Presently before the Court are the following: (1) the Sirius defendants' motion to dismiss Count II of the complaint, pursuant to Rules 12(b)(6) and 19 of the Federal Rules of Civil Procedure, and Count III, pursuant to Rule 9 of the Federal Rules of Civil Procedure; and (2) the Bornn defendants' motion to dismiss the complaint in its entirety, pursuant to Rules 12(b)(2), (3), and (6) of the Federal Rules of Civil Procedure.

For the reasons set forth below, the Court grants the Sirius defendants' motion to dismiss Count II only with respect to defendant T-Rex SJ and denies it with respect to Calhoun, Parella, Hanrahan, and Gilbert. The Court further grants the Sirius defendants' motion to dismiss Count III of the complaint for failure to plead fraud with sufficient particularity, as required under Rule 9(b). Finally, the Court grants the Bornn defendants' motion to dismiss the claims against them, pursuant to Fed. R. Civ. P. 12(b)(2), for lack of personal jurisdiction.

I. FACTS

The following facts are taken from the complaint and are not findings of fact by the Court. The Court assumes these facts to be true for the purpose of deciding the motion to dismiss and construes them in the light most favorable to plaintiff, the non-moving party.

A. Establishment of AVE1

The complaint states that, on or about May 18, 1987, American Virgin Enterprises, Ltd. ("AVE1") was established as a New York corporation with its principal place of business in Garden City, New York. (Compl. ¶ 10.) Stair was the President, Calhoun was the Treasurer, and Hanrahan was an officer. (Compl. ¶ 11.) Stair and Hanrahan contributed capital to AVE1, and Stair and Calhoun were employed by AVE1. (Compl. ¶ 13.) Stair and Calhoun each received 34 shares of AVE1, and Hanrahan received zero. (Compl. ¶ 11.)

The other five members of AVE1 included Secretary Michael DiRaimondo ("DiRaimondo"), who received 12 shares, and Vice President William Childs ("Childs"), who received 34 shares. (Compl. ¶ 11.)

The "stated objective of AVE1 was development of a resort and marina" in the Virgin Islands ("the Project"). (Compl. ¶ 10.) According to the complaint, in order to develop the project, AV1 leased property ("the Property") from the Virgin Islands Port Authority ("Port Authority"). (Compl. ¶ 10.)

B. Dissolution of AVE1

According to the complaint, in or about 1993 and "unbeknownst" to plaintiff, AVE1

2

was "administratively dissolved" by the New York Secretary of State. (Compl. ¶ 15.)

The complaint states that Stair did not learn of the dissolution of AVE1 until March 28, 2001, by letter from DiRaimondo, who also served as AVE1's corporate counsel. (Compl. ¶ 15.) The complaint states that, "[w]hen confronted by Stair with this information," Calhoun "persuaded Stair that the dissolution was insignificant." (Compl. ¶ 16.) However, Stair alleges that AVE1 was dissolved because it failed to comply with its "franchise tax obligations." (Compl. ¶ 16.)

C. Institution of the Church Litigation

The complaint states that, in or about 1994, the Moravian Church ("Church") sued the Government of the Virgin Islands, the Port Authority, and AVE1 ("Church litigation"), on the grounds that the property where the Project was located (the "Property") was owned by the Church. (Compl. ¶ 14.) According to the complaint, the Church litigation caused development of the property to halt. (Compl. ¶ 14.)

D. Establishment of AVE2

The complaint states that, on or about May 8, 2001, Calhoun – "unbeknownst to and without the authorization of Stair and other shareholders of AVE1" – incorporated American Virgin Enterprises, Ltd. ("AVE2") in New York State. (Compl. ¶ 17.) The documents filed with the state indicated that Calhoun was the Chief Executive Officer, and that Stair would receive any service of process on behalf of AVE2. (Compl. ¶ 18.) According to the complaint, Stair, Calhoun, and Hanrahan were designated as "interim officers to serve until the election of officers at the initial meeting of the Shareholders of AVE2." (Compl. ¶ 19.) However, the complaint states that this designation was made without Stair's knowledge. (Compl. ¶ 19.)

Further, with respect to the establishment of AVE2, Calhoun informed Stair

> (a) that formation of AVE2 was a legally acceptable alternative to reinstatement via satisfaction of AVE1's delinquent franchise taxes, (b) that formation of AVE2 was less complicated and less costly than reinstatement of AVE1 and [(c)] that AVE2 would be, in all respects, the successor in interest to AVE1.

(Compl. ¶ 20.) According to Stair, he would not have consented to the formation of AVE2 had he known "the truth" about these representations. (Compl. ¶ 22.)

E. The November 24, 2001 Meeting

The complaint alleges that on or about November 24, 2001, Stair met with Calhoun and Hanrahan (the "November 2001 meeting"). (Compl. ¶ 12.) The complaint states that the "business transacted at the November 2001 meeting was characterized as both (a) the 'Final Meeting of the Directors' of AVE1, and (b) the 'First Meeting of the Board of Directors' of AVE2." (Compl. ¶ 21.) Stair states that all actions that he took, ratified, or to which he consented at the November 2001 meeting "were in reliance upon Calhoun's representations." (Compl. ¶ 22.)

The complaint further states that, at the November 2001 meeting, Stair, Calhoun, and

Hanrahan each received 34 shares of AVE2. (Compl. ¶ 24.) Stair was elected the Vice President and Treasurer, Hanrahan was elected Secretary, and Calhoun was elected President. (Compl. ¶ 24.) DiRaimondo and Childs received no shares. (Compl. ¶ 24.)

### (1) Calhoun's Alleged Authority Over AVE2

According to the complaint, Calhoun also served as AVE2's counsel and, at Calhoun's "insistence" – and "with the support" of Hanrahan – was "'given full authority to 'negotiate, litigate, settle, or/and adjudicate all matters of the corporation, including, but not limited to, the pending dispute & litigation regarding the marina project . . . & all issues related thereto.'" (Compl. ¶ 26.)

### F. Sirius

The complaint states that, on or about August 29, 2005 – again, allegedly "unbeknownst to Stair" – Sirius was formed as a limited liability company in the Virgin Islands. (Compl. ¶ 27.) The complaint alleges that "one or more" of the Bornn defendants helped form Sirius. (Compl. ¶ 27.) In addition, the complaint alleges that the principal office of Sirius was designated at an address at which "one or more" of the Bornn defendants maintains an office. (Compl. ¶ 27.) Sirius was not a party to the Church litigation. (Compl. ¶ 28.)

### (1) Transfer of Interest to Sirius

The complaint states that, without Stair's knowledge, Hanrahan and Calhoun – with the "assistance and counsel" of the Bornn defendants – caused the transfer of AVE1's and/or AVE2's interest in the Church litigation and the Property to Sirius.

### (2) The Sirius Lease

According to the complaint, on or about January 23, 2006 – "in a transaction related, either directly or indirectly, to the settlement" of the Church litigation – Sirius entered into a 99-year lease with the Church for the Property ("Sirius lease"). (Compl. ¶ 28.) Stair alleges that he received notice neither of the Sirius lease nor of the settlement of the Church litigation. (Compl. ¶ 28.)

### (3) The Sirius Operating Agreement

The complaint alleges that, on May 4, 2006 – without Stair's knowledge or signature – the Sirius Operating Agreement ("Operating Agreement") was executed. (Compl. ¶¶ 30, 32.) The Operating Agreement stated that the members of Sirius were Stair, Calhoun, Hanrahan, Gilbert, and Parella. (Compl. ¶ 30.)

#### a. Calhoun's Alleged Authority Over Sirius

The complaint further alleges that the Operating Agreement designated Calhoun as "Managing Member," vested with "'full and complete authority, power and discretion to manage and control the business, affairs and properties of [Sirius], to make all decisions regarding those matters and to perform any and all other acts or activities customary or incident to the management of [Sirius's] business.'" (Compl ¶ 30.)

#### b. Voting Units

According to the complaint, the Operating Agreement provided Calhoun with 29 voting units in Sirius. (Compl. ¶ 30.) Hanrahan, Gilbert, and Parella received 19 voting units. (Compl. ¶ 30.) Neither Childs nor DiRaimondo received voting units. (Compl. ¶ 31.) Stair received 14 voting units, which

4

allegedly represented a 14% decrease in his interest in the project. (Compl. ¶¶ 30, 32.)

The Operating Agreement provided that these units were distributed according to "'the contribution of the Ground Lease with the Moravian Church and related out of pocket expenditures incurred.'" (Compl. ¶ 30.)

### G. Establishment of T-Rex

According to the complaint, Calhoun, Hanrahan, Gilbert, and Parella engaged in negotiations with T-Rex Capital LLC, a Connecticut limited liability company, for the purpose of obtaining financing for the Project. (Compl. ¶ 33.) Without Stair's knowledge, T-Rex was subsequently established as a limited liability company in the Virgin Islands "for the purpose of assuming responsibility for development" of the Project. (Compl. ¶ 34.)

#### (1) Assignment to T-Rex

According to the complaint, without Stair's knowledge, T-Rex Capital LLC and Sirius each acquired a 50% interest in T-Rex SJ. (Compl. ¶ 34.) The Sirius lease was subsequently assigned to T-Rex SJ (the "assignment"), and Stair's interest in the project was reduced to 7%. (Compl. ¶ 34.)

## II. PROCEDURAL HISTORY

Plaintiffs filed the complaint in this action on September 18, 2007. On March 28, 2008, the Sirius defendants and the Bornn defendants submitted their motions to dismiss. On May 28, 2008, plaintiffs submitted their responses. On June 11, 2008 the Sirius defendants and the Bornn defendants submitted their replies. The Court held oral argument on June 20, 2008.

## III. STANDARD OF REVIEW

### A. Rule 12(b)(2)

On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing that the court has jurisdiction over the defendant. *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996). However, prior to discovery, the plaintiff "need only make a prima facie showing of jurisdiction through its own affidavits and supporting materials to defeat the motion." *Welinsky v. Resort of the World D.N.V.*, 839 F.2d 928, 930 (2d Cir. 1988) (quoting *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981)). Furthermore, in considering a Rule 12(b)(2) motion, the pleadings and affidavits are to be construed in the light most favorable to plaintiff, the non-moving party, and all doubts are to be resolved in plaintiff's favor. *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 85 (2d Cir. 2001).

### B. Rule 12(b)(6)

In reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must accept the factual allegations set forth in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. *See Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). The plaintiff must satisfy "a flexible 'plausibility standard.'" *Iqbal v. Hasty*, 490 F.3d 143, 157 (2d Cir. 2007). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007). The Court, therefore, does not require "heightened fact pleading of

specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

In connection with a motion to dismiss under Rule 12(b)(6), the Court generally may only consider "facts stated in the complaint or documents attached to the complaint as exhibits or incorporated by reference." *Nechis,* 421 F.3d at 100; *accord Kramer v. Time Warner Inc.,* 937 F.2d 767, 773 (2d Cir. 1991). The Court may only consider a document not appended to the complaint if the document is "incorporated in [the complaint] by reference" or is a document "upon which [the complaint] *solely* relies and . . . is *integral to the complaint*." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991)) (emphases in original). Courts also "'routinely take judicial notice of documents filed in other courts . . . not for the truth of the matters asserted in other litigation, but rather to establish the fact of such litigation and related filings.'" *Crews v. County of Nassau*, No. 06 Civ. 2610 (JFB), 2007 U.S. Dist. LEXIS 6572, at *5 n.2 (E.D.N.Y. Jan. 30, 2007) (quoting *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991)).[2]

C. Rule 12(b)(3)

The burden with respect to a Rule 12(b)(3) motion to dismiss is the same as under Rule 12(b)(2) – namely, the burden of showing the existence of venue in the forum district lies with the plaintiff but, absent an evidentiary hearing, the plaintiff need only make a *prima facie* showing of venue based on the pleadings, or any affidavits submitted. *See Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 355 (2d Cir. 2005) ("We agree that a motion to dismiss for improper venue under Rule 12(b)(3) raises a quintessential legal question – where is venue proper? – even to the extent that it may be fact-specific. Accordingly, we will apply the same standard of review in Rule 12(b)(3) dismissals for improper venue as we do in Rule 12(b)(2) dismissals for lack of personal jurisdiction . . . ."); *Arma v. Buyseasons*, *Inc.,* 519 F. Supp. 2d 637, 648 (S.D.N.Y. 2008) ("[T]he burden of showing that venue in the forum district is proper falls on the plaintiff, but absent an evidentiary hearing, the plaintiff need only make a prima facie showing of [venue].") (citations and quotations omitted). Thus, disputed facts may be resolved against the non-moving party only after an evidentiary hearing, where the plaintiff must demonstrate venue by a preponderance of the evidence. *New Moon Shipping Co., Ltd. v. MAN B & W Diesel AG,* 121 F.3d 24, 29 (2d Cir. 1997) ("A disputed fact may be resolved in a manner adverse to the plaintiff only after an evidentiary hearing . . . . [A] party seeking to avoid enforcement of such a contractual clause is also entitled to have the facts viewed in the light most favorable to it, and no disputed fact should be resolved against that party until it has had an opportunity to be heard.") (citations omitted); *see also Gulf Ins. Co.*, 417 F.3d at 355 ("[I]f the court holds an evidentiary hearing . . . the plaintiff must demonstrate [venue] by a

---

[2] Here, defendants ask the Court to consider for purposes of this motion the exhibits appended to their motion papers, including the Sirius Operating Agreement. Because the Court may consider a document not appended to the complaint if the document is incorporated in the complaint by reference, *Roth*, 489 F.3d at 509, the Court considers the Operating Agreement with respect to the motion to dismiss Count II of the complaint.

6

preponderance of the evidence.") (quoting *CutCo Indus. v. Naughton*, 806 F.2d 361, 364-65 (2d Cir. 1986)) (additional citation omitted); *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1139 (9th Cir. 2004) ("To resolve such motions when genuine factual issues are raised, it may be appropriate for the district court to hold a Rule 12(b)(3) motion in abeyance until the district court holds an evidentiary hearing on the disputed facts. Whether to hold a hearing on disputed facts and the scope and method of the hearing is within the sound discretion of the district court.") (citations omitted).

## IV. DISCUSSION

"On the theory that a court ought to first determine whether a party is properly present before considering substantive issues, the normal practice is to consider 12(b)(2) motions prior to 12(b)(6) motions." *In re DES Cases,* 789 F. Supp. 552, 560 (E.D.N.Y. 1992) (citing *Arrowsmith v. United Press Int'l*, 320 F.2d 219, 221 (2d Cir. 1963) (en banc)). The Court therefore addresses the pending motions in turn, beginning with the Bornn Defendants' 12(b)(2) motion.

### A. Personal Jurisdiction

In a case resting on diversity jurisdiction, the issue of personal jurisdiction is governed by the law of the forum state. *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 104 (2d Cir. 2006). Under New York law, there are two bases for personal jurisdiction over out-of-state defendants: (1) general jurisdiction pursuant to N.Y. C.P.L.R. § 301, and (2) long-arm jurisdiction pursuant to N.Y. C.P.L.R. § 302 ("Section 302"). "District courts resolving issues of personal jurisdiction must . . . engage in a two-part analysis." *Grand River Enterps. Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 165 (2d Cir. 2005) (citation omitted). In order for plaintiffs to make the required *prima facie* showing that the Court may exercise personal jurisdiction over the Bornn defendants, they must establish (1) jurisdiction under the laws of the forum state (New York in this case), and (2) that the exercise of jurisdiction under these laws is consistent with federal due process requirements. *Pryor*, 425 F.3d at 165.

The issue here is whether long-arm jurisdiction under Section 302 applies to the Bornn defendants, who are non-domiciliaries of New York.[3] For the reasons that follow, the Court finds that plaintiffs' allegations fail to establish statutory long-arm jurisdiction over the Bornn defendants by making a *prima facie* showing of personal jurisdiction.

Section 302(a) sets forth four bases for specific jurisdiction over an out-of-state defendant.[4] As an initial matter, Section

---

[3] General jurisdiction over the Bornn defendants is inapplicable. General jurisdiction is found over a non-domiciliary defendant only if he is engaged in a "continuous and systematic course of doing business" in New York. In addition, an "individual cannot be subject to such jurisdiction unless doing business here individually, rather than on behalf of a corporation." *Lancaster v. Colonial Motor Freight Line, Inc.*, 177 A.D.2d 152, 159 (N.Y. App. Div. 1992); *accord Arch Specialty Ins. Co. v. Entm't Specialty Ins. Servs.*, 2005 U.S. Dist. LEXIS 4746, at *10 (S.D.N.Y. Mar. 23, 2005). Here, there is no allegation that any of the Bornn defendants engage in a continuous and systematic course of doing business in New York.

[4] Section 302(a) provides:

> § 302. Personal jurisdiction by acts of non-domiciliaries

7

302(a)(4) is inapplicable because plaintiffs do not allege that the Bornn defendants own real property in New York. Section 302(a)(2) is also inapplicable, because plaintiffs do not claim that any of the allegedly tortious actions committed by the Bornn defendants took place in New York State.

It also is clear that Section 302(a)(1) does not apply. To establish personal jurisdiction under N.Y. C.P.L.R. § 302(a)(1), "two requirements must be met: (1) the defendant must have transacted business within the state; and (2) the claim asserted must arise from *that* business activity." *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006) (citing *McGowan v. Smith*, 419 N.E.2d 321, 323 (N.Y. 1981)) (emphasis added). The statute allows jurisdiction "only over a defendant who has 'purposefully availed himself of the privilege of conducting activities within New York and thereby invok[ed] the benefits and protections of its laws.'" *Fort Knox Music Inc. v. Baptiste*, 203 F.3d 193, 196 (2d Cir. 2000) (quoting *Parke-Bernet Galleries v. Franklyn*, 256 N.E.2d 506, 508-09 (N.Y. 1970)).

Several factors should be considered in determining whether an out-of-state defendant transacts business in New York, including:

> (i) whether the defendant has an on-going contractual relationship with a New York corporation; (ii) whether the contract was negotiated or executed in New York and whether, after executing a contract with a New York business, the defendant has visited New York for the purpose of meeting with parties to the contract regarding the relationship; (iii)

---

> (a) Acts which are the basis of jurisdiction. As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:
>
> 1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or
>
> 2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or
>
> 3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he
>
> (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or
>
> (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or
>
> 4. owns, uses or possesses any real property situated within the state.

N.Y. C.P.L.R. § 302(a).

8

what the choice-of-law clause is in any such contract; and (iv) whether the contract requires [defendant] to send notices and payments into the forum state or subjects them to supervision by the corporation in the forum state.

*Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 22 (2d Cir. 2004) (quoting *Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25, 29 (2d Cir. 1996)). None of these factors is dispositive. "[T]he ultimate determination is based on the totality of circumstances." *Id*.

Here, the Bornn defendants are alleged to have assisted in the formation of Sirius in the Virgin Islands and the unlawful transfer of the Sirius lease to T-Rex SJ. Thus, there is no transaction alleged to have occurred in New York, much less one from which the claims arose. During oral argument, plaintiffs requested leave to amend the complaint to add the fact that the Bornn defendants were retained as counsel by AVE1 and/or AVE2 in connection with the Church litigation in the Virgin Islands. (*See also* Plaintiffs' Memorandum in Opposition, at 17.) Leave to amend the complaint with such an allegation, however, would be futile because the addition of that allegation does not overcome the clear lack of personal jurisdiction over the Bornn defendants.[5] Nowhere in the complaint do plaintiffs allege that the Bornn defendants ever traveled to New York in connection with their representation, negotiated their retainer agreement in New York, or performed their services in New York. Rather, it is undisputed that the Bornn defendants are alleged to have (1) acted as local counsel in the Virgin Islands with respect to litigation involving real property in the Virgin Islands, (2) assisted the formation of a limited liability company in the Virgin Islands, and (3) facilitated the assignment of a lease with respect to real property in the Virgin Islands. Under these circumstances, this Court may not exercise personal jurisdiction over the Bornn defendants. *See Mayes v. Leipziger*, 674 F.2d 178, 179 (2d Cir. 1981) (finding lack of personal jurisdiction under Section 302(a)(1) where defendant attorneys were never present in New York in connection with the contract, defendants did not initiate contact with the New York individuals, the retainer agreement was not made in New York, and defendants were not to perform their services in New York).

The Court now turns to the only remaining provision, Section 302(a)(3). Because plaintiffs' claims against the Bornn defendants for (aiding and abetting) breach of fiduciary duty, fraud, and legal malpractice sound in tort, purportedly committed outside of New York, this is the operative provision. "The New York State long-arm statute provides personal jurisdiction over defendants who commit tortious acts without the state causing injury within the state, if the defendant regularly does or solicits business within the state or expects the act to have consequences within the state and derives substantial revenue from interstate commerce." *See Daniel v. Am. Bd. of Emergency Medicine*, 802 F. Supp. 912, 919 (W.D.N.Y. 1992) (citing N.Y. C.P.L.R. § 302(a)(3)).

---

[5] At oral argument, other than this one allegation, plaintiffs' counsel did not identify any additional facts that could be alleged for the purpose of showing personal jurisdiction over the Bornn defendants.

9

For the purposes of Section 302(a)(3), this Court must determine first, whether plaintiffs sufficiently alleged that the act was "tortious," and second, whether plaintiff satisfied either subsections (i) or (ii). In connection with their motion, the Bornn defendants do not contest that a "tortious act" has been alleged. At this preliminary stage of the litigation, a "plaintiff need not actually prove that defendant committed a tort but rather need only state a colorable cause of action." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 125 (2d Cir. 2002). However, the Court agrees with the Bornn defendants and finds that plaintiffs' allegations, even if assumed to be true, are insufficient to establish a *prima facie* case of personal jurisdiction under Section 302(a)(3), both because of the failure to adequately allege a cognizable "injury" within the State and because of a failure to adequately plead facts that satisfy the requirements of subsection (i) or (ii) of Section 302(a)(3).

First, the Court finds that plaintiffs' allegations regarding injury within New York are insufficient to establish a *prima facie* case under Section 302(a)(3). "The New York Court of Appeals has interpreted injury 'within the state' to include harm to a business in the New York market through lost sales or lost customers." *Network, Inc. v. Access America/Connect Atlanta, Inc.*, 975 F. Supp. 494, 497 (S.D.N.Y. 1997) (citing *Sybron Corp. v. Wetzel*, 46 N.Y.2d 197, 205-06 (N.Y. 1978)). In this case, however, plaintiffs fail to plead anything other than potential economic injury experienced by Stair, AVE1, and AVE2 as occurring in New York. However, this allegation is insufficient, because on its face, it may simply be a consequence of the companies being based in New York. However, plaintiffs cannot rely simply on the fact that Stair, AVE1 and AVE2 are based in New York; that is not enough under the law to sustain a legal "injury within the state" for the purposes of Section 302(a)(3). *See Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 791 (2d Cir. 1999).

Specifically, "courts determining whether there is injury in New York sufficient to warrant § 302(a)(3) jurisdiction must generally apply a situs-of-injury test, which asks them to locate the 'original event which caused the injury.' This 'original event' is, however, generally distinguished not only from the initial tort but from the final economic injury and the felt consequences of the tort." *Id*. (citation omitted). Applying this standard, it is apparent that the "final economic injury" may be in New York, as experienced by Stair, AVE1, or AVE2, but that the "original event which caused the injury" would certainly have occurred, under the allegations in the complaint, in the Virgin Islands. Any alleged actions by the Bornn defendants in mishandling the Church litigation or assisting Sirius in usurping the lease for the Property in the Virgin Islands from AVE1 and/or AVE2, or participating in the transfer of the lease to T-Rex SJ, would have resulted in an original event in the Virgin Islands that involved the state of the Property. Thus, in this case, personal jurisdiction under Section 302(a)(3) is unsustainable.

The insufficiency of plaintiff's pleadings, moreover, extend beyond the element of injury within the state. Turning to the two subsections of Section 302(a)(3), the Court concludes that plaintiffs have failed to establish a *prima facie* case of either prong. Specifically, the Court finds that the allegations contained in the complaint fail to allege that the Bornn defendants regularly do or solicit business within New York or should have reasonably expected their actions to have

consequences within New York, while deriving substantial revenue from interstate commerce. First, there are no allegations as to the Bornn defendants' *regular* business activities or solicitation of business in the State of New York, or any other persistent non-business activities in New York.[6] Thus, the Court lacks personal jurisdiction over the Bornn defendants under Section 302(a)(i). *See Darby Trading Inc. v. Shell Intern. Trading and Shipping Co. Ltd.*, 568 F. Supp. 2d 329, 334 (S.D.N.Y. 2008) ("the Complaint does not allege that STASCO does any business in New York, engages in any course of conduct in New York, or derives any revenue from goods and services used or purchased in New York . . . . Accordingly, Plaintiff cannot establish jurisdiction under Section 302(a)(3)(i)."); *Daniel*, 802 F. Supp. at 920 (finding that New York's long-arm statute would not apply where "no representations have been made that the individual Defendants engage in or solicit business within New York, or derive substantial revenue from New York").

Plaintiffs seem to concede in their opposition papers that the only arguably applicable provision is Section 302(a)(3)(ii). (Plaintiffs' Memorandum in Opposition, at 16.) However, even this argument is easily rejected. "The conferral of jurisdiction under [CPLR § 302(a)(3)(ii) ] rests on five elements: First, that defendant committed a tortious act outside the State; second, that the cause of action arises from that act; third, that the act caused injury to a person or property within the State; fourth, that defendant expected or should reasonably have expected the act to have consequences in the State; and fifth, that defendant derived substantial revenue from interstate or international commerce." *LaMarca v. Pak-Mor Mfg. Co.*, 95 N.Y.2d 210, 214 (2000); *accord Sole Resort, S.A. de C.V. v. Allure Resorts Management, L.L.C.*, 450 F.3d 100, 106 (2d Cir. 2006). Plaintiffs

---

[6] The Second Circuit has made clear that both business and non-business activities may be considered under Section 302(a)(3)(i):

> Although this jurisdictional predicate has not often been expounded upon in the New York courts, there is nothing in the plain language of § 302(a)(3)(i) which suggests that the relevant contacts must be solely business-related; in fact, this predicate's juxtaposition as an alternative to "regularly do[ing] or solicit[ing] business" suggests precisely the opposite. *See also David Tunick, Inc. v. Kornfeld*, 813 F. Supp. 988, 991 (S.D.N.Y. 1993) (considering both business and non-business activities of art dealer); *In re Union Carbide Corp. Consumer Prods. Bus. Secs. Litig.*, 666 F. Supp. 547, 571 (S.D.N.Y. 1987) (listing defendant's leisure travel and negotiation of personal loan in addition to business-related meetings); *Granada Television, Int'l, Ltd. v. Lorindy Pics. Int'l Inc.*, 606 F. Supp. 68, 72 n.5 (S.D.N.Y. 1984) ("[T]he persistent course of conduct may involve a great range of human activity which, while it might fall beyond the pale of 'business' conduct, would, because of its consistency, serve as a solid link of jurisdiction to New York.") (quoting J. McLaughlin, Practice Commentary, § 302, McKinney's Consol. Laws of N.Y. (1972)).

*Bank Brussels Lambert,* 305 F.3d at 127.

have failed to allege any facts from which one could plausibly infer that the Bornn defendants expected or should have reasonably expected their tortious actions to have consequences within New York *and* that they derive substantial revenue from interstate commerce. In resolving this jurisdictional issue, the Court further considers the affidavits beyond the complaint, which plaintiffs do not dispute, indicating that the Bornn defendants are located in the Virgin Islands and the Virgin Islands only. (Declaration of David A. Bornn ¶ 3-5.) David Bornn is licensed to practice law only in the Virgin Islands and is a resident thereof. (Declaration of David A. Bornn ¶ 3.) In short, the claims against the Bornn defendants are dismissed for lack of personal jurisdiction. *See Markham v. Gray*, 393 F. Supp. 163, 167 (W.D.N.Y. 1975).

Accordingly, because defendants have failed to make a *prima facie* showing that the New York long-arm statute establishes personal jurisdiction over the Bornn defendants, the claims against the Bornn defendants are dismissed for lack of personal jurisdiction. Moreover, to the extent that leave to amend is sought to add that the Bornn defendants were retained as counsel by AVE1 and/or AVE2 in connection with the Church litigation in the Virgin Islands, that request is denied on the grounds that the addition of that allegation would be futile, because the complaint would still be insufficient to show personal jurisdiction.[7] *See Tocker v. Philip Morris Cos., Inc.*, 470 F.3d 481, 491 (2d Cir. 2006); *Dluhos v. Floating Abandoned Vessel Known as New York*, 162 F.3d 63, 69 (2d Cir. 1998).

## B. Count II

The Sirius defendants move to dismiss Count II of the complaint, which asserts a cause of action for breach of fiduciary duty under the laws of the Virgin Islands. First, they argue that the terms of the Operating Agreement bars the claim as a matter of law. (Defendants' Memorandum of Law, at 8.) Alternatively, they argue that the Church is a necessary party to any claim seeking to invalidate the assignment of the Sirius lease to T-Rex SJ and, because the Court lacks

---

[7] The "exercise of long arm jurisdiction . . . by a New York court must also satisfy constitutional due process standards." *Sunward*, 362 F.3d at 24. Because the Court concludes that plaintiffs have failed to show that the requirements of New York's long-arm statute have been met with respect to the Bornn defendants, no further discussion of whether such jurisdiction would pass constitutional muster is required. *Bank Brussels Lambert*, 305 F.3d at 127 ("as the New York Court of Appeals has made clear, the constitutional analysis is a distinct step from the statutory one; it is only once the long-arm statute is deemed satisfied that the court need examine whether due process is likewise comported with.") (citing *LaMarca*, 95 N.Y.2d at 214); *Bensusan Rest. Corp. v. King,* 126 F.3d 25, 27 (2d Cir. 1997) ("If the exercise of jurisdiction is appropriate under that statute, the court then must decide whether such exercise comports with the requisites of due process."). The Court agrees with the Bornn defendants, however, that it is nonetheless apparent that plaintiffs have failed to allege sufficient minimum contacts between the Bornn defendants and New York to satisfy the due process requirements of the Fourteenth Amendment. *See Int'l Shoe Co. v. State of Washington*, 326 U.S. 310, 318 (1945). In addition, because the Court grants the Bornn defendants' motion to dismiss based on lack of personal jurisdiction, it is not necessary for the Court to consider its other arguments regarding dismissal of the claims against them, including the motion for improper venue under Rule 12(b)(3).

jurisdiction over the Church, Count II should be dismissed pursuant to Fed. R. Civ. P. 12(b)(7) for failure to join an indispensable party under Fed. R. Civ. P. 19(b). (Defendants' Memorandum of Law, at 14.)

As an initial matter, plaintiffs have conceded, as evidenced in letters submitted to the Court as well as on the record during oral argument, that they are not seeking to invalidate or rescind the lease between Sirius and the Church, or the assignment of that lease from Sirius to T-Rex SJ. (*See* Letter from James W. Kennedy, Esq., dated July 16, 2008, docket entry [34].) Because the Church's rights pursuant to its contract with T-Rex SJ and Sirius is no longer contingent upon the outcome of this litigation, the issue as to whether the Church need be brought into this litigation as a necessary party – and the concomitant issue of whether this Court would have the power to exercise personal jurisdiction over the Church – is moot. *See Assoc. Dry Goods Corp. v. Towers Fin. Corp.*, 920 F.2d 1121, 1123 (2d Cir. 1990).

Moreover, defendants argue that plaintiffs' concession that they are not seeking to invalidate the assignment of the Sirius lease warrants the dismissal of Count II against the joint venture, T-Rex SJ. This is because the claim no longer implicates its rights or obligations under the lease with the Church and, therefore, it is no longer a necessary party to this litigation. The Court agrees. To the extent that plaintiffs may argue that T-Rex SJ may be impacted by the outcome of this litigation,[8] counsel for T-Rex SJ has assured plaintiffs and the Court that it has no interest in the outcome of this litigation. (*See* Letter from James W. Kennedy, Esq., dated Aug. 20, 2008, docket entry [38].) In any event, any claim brought on behalf of Sirius, to the extent that damages or reorganizational relief is made to Sirius, pertains to Sirius and only Sirius. Even though plaintiffs are correct in pointing out that Sirius owns a 50% interest in T-Rex SJ (*See* Letter from Susan Schneiderman, Esq., dated July 16, 2008, docket entry [35]), the resultant impact on the ownership interests in T-Rex SJ is only indirectly related to the outcome of this litigation. Indeed, there has been no indication to the contrary. As plaintiffs acknowledge, T-Rex SJ is a separate legal entity operating in conjunction with a non-party to this litigation. Therefore, any issues involving the subsequent transfer of Sirius' interest in T-Rex SJ is a wholly separate issue from the individual members' interests within Sirius.[9] Under these circumstances, where there is no relief sought by plaintiffs that would impact the rights or obligations of T-Rex SJ under the assigned lease and where there are no claims actually brought against T-Rex SJ, the Court dismisses Count II of the complaint as to T-Rex SJ. *See* Fed. R. Civ. P. 21 ("On motion or on its own, the court may at any time, on just terms, add or drop a party.").

Defendants further argue that Count II should be dismissed with respect to all

---

[8] Correspondence following oral argument suggests that this is why the parties were unable to reach a stipulation as to dismissal with respect to T-Rex SJ. (*See* Letter from Susan Schneiderman, Esq., dated July 16, 2008, docket entry [35]; Letter from James W. Kennedy, Esq., dated Aug. 20, 2008, docket entry [38]; Letter from Susan Schneiderman, Esq., dated Aug. 21, 2008, docket entry [39].)

[9] Counsel for plaintiffs indicated that this was one of her concerns. (*See* Letter from Susan Schneiderman, Esq., dated Aug. 21, 2008, docket entry [39].)

remaining defendants because it is barred, as a matter of law, by the terms of the Operating Agreement. The Court is not persuaded by this argument, however, and declines to dismiss Count II as to the remaining defendants at this stage of the litigation.

Indeed, defendants conceded during oral argument that plaintiffs have the right to make their pleadings in the alternative. Although it is true that the gravamen of plaintiffs' complaint is that Sirius, through the actions of the defendants, usurped a business opportunity of AVE1 and/or AVE2 – the grounds for which would be covered under Count I of the complaint – the complaint cannot be dismissed simply because plaintiff further pleads that defendants also breached their fiduciary duties to Sirius. *See Spirit Partners, L.P. v. audiohighway.com*, 2000 WL 685022, at *8 (S.D.N.Y. May 25, 2000) ("The liberal standards governing pleadings found in Rule 8(e)(2), Fed. R. Civ. P., permit a party to plead alternative, even inconsistent, causes of action.") (citations omitted).

As a threshold matter, defendants do not argue that Stair is not a member of Sirius and lacks standing to pursue his derivative claim. Instead, defendants only make the argument that should Stair insist on bringing this derivative claim, he is barred by the terms of the Operating Agreement – the very document that granted his membership status – from challenging the assignment of the Sirius lease to T-Rex SJ. That argument, however, fails for two reasons. First, Stair does not claim that he is bound by any, or all, of the provisions in the Operating Agreement or that his membership is based on that document. Even though Stair argues that he did not sign the Operating Agreement (Plaintiffs' Memorandum in Opposition, at 10), Stair alleges that the Sirius defendants have acted with every indication that he was in fact considered a member (as evidenced by the Operating Agreement, regardless of its binding effect), and again, defendants do not argue that he is not in fact a member. As the Virgin Islands law governing limited liability companies states, an operating agreement that governs the relations among members is optional and need not be in writing. *See* V.I. CODE ANN. tit.13, § 1102 (2008) (defining "Operating Agreement"); *id*. § 1104 ("all members of a limited liability company may enter into an operating agreement, which need not be in writing, to regulate the affairs of the company and the conduct of its business, and to govern relations among the members, managers, and company."). Thus, there may be a question as to the binding effect of this Operating Agreement.

Second, as a matter of law, it is unclear whether the Operating Agreement, if binding, would actually bar plaintiff's claims. On its face, the language is not unambiguous in this respect, and there is no express reference to the assignment of the Sirius lease that is primarily at issue.[10] This is particularly

---

[10] The relevant part of the Operating Agreement states:

> B. **Powers**. Except as otherwise provided herein, the Manager shall have full and complete authority, power and discretion to manage and control the business, affairs and properties of the Company, to make all decisions regarding those matters and to perform any and all others [sic] acts or activities customary or incident to the management of the Company's business. However, no Manager shall take any of the following actions on

14

unclear because the Operating Agreement was entered into months after the assignment of the Sirius lease had already been made. (Compl. ¶ 30.) Moreover, plaintiffs claim that their objections lie not only with the assignment of the lease, but with various other actions by defendants that breached their duties of care and loyalty to Sirius (Plaintiff's Memorandum in Opposition, at 12), which are unwaivable via an operating agreement, by statute. *See* V.I. CODE ANN. tit.13, § 1409 (2008). Given these considerations, the Court cannot determine, at the motion to dismiss stage before any discovery has been made on these issues, that plaintiffs' claims under Count II, for breach of fiduciary and statutory duties by the Sirius defendants (excluding T-Rex SJ), fail as a matter of law.

---

the Company's behalf without the written consent of the majority of the remaining voting Members except as to the authority previously granted to the Managing Member, including but not limited to, executing leases, mortgages, bonds or security agreements,

1. Borrow or lend money;
2. Make, deliver, or accept commercial paper; or
3. Buy or execute a purchase agreement, or sell or execute a sales agreement for any property other than that bought or sold in the regular course of the Company's business;
4. Admit new members.

(Ex. 2 to Declaration of Rory Calhoun in Support of Motion to Dismiss, at Art. X.)

C. Sufficiency of Pleading Fraud

With respect to the fraud claim set forth in Count III, the Sirius defendants argue that the claim must be dismissed for failure to plead fraud with particularity under Rule 9(b). As set forth below, the Court agrees.

Claims concerning fraud are subject to heightened pleading standards pursuant to Fed. R. Civ. P. 9(b). Specifically, Federal Rule of Civil Procedure 9(b) requires the following:

> In allegations of fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.

Fed. R. Civ. P. 9(b). Thus, "[i]n order to comply with Rule 9(b), 'the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)); *accord Knoll v. Schectman*, 275 Fed. Appx. 50, 2008 WL 1868440, at *1 (2d Cir. 2008)). Conclusory allegations of fraud will be dismissed under Rule 9(b). *See Shemtob v. Shearson, Hammill & Co.,* 448 F.2d 442, 444 (2d Cir. 1971). Moreover, "[w]here multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud." *DiVittorio v.*

15

*Equidyne Extractive Indus.*, 822 F.2d 1242, 1247 (2d Cir. 1987).

Again, under Rule 9(b), "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). "But because we must not mistake the relaxation of Rule 9(b)'s specificity requirement regarding condition of mind for a license to base claims of fraud on speculation and conclusory allegations[,] . . . plaintiffs must allege facts that give rise to a strong inference of fraudulent intent. The requisite 'strong inference' of fraud may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Lerner*, 459 F.3d at 290-91 (internal quotations and citations omitted).

Here, the defendants argue that the complaint fails to contain sufficient allegations to support a fraud claim. The Court agrees and dismisses Count III with leave to replead, as set forth below.

As noted *supra*, Rule 9(b) requires all averments of fraud and the circumstances constituting fraud to be stated with particularity. The purpose of Rule 9(b) is to give defendants fair notice of the fraud alleged against them. While Rule 9(b) does not require that each specific misrepresentation be identified where an ongoing fraudulent scheme is alleged, see *Lehman Bros. Comm. Corp. v. Minmetals Int'l Non-Ferrous Metals Trading Co.*, No. 94-cv-8301 (JFK), 1995 U.S. Dist. LEXIS 15185, at *6 (S.D.N.Y. Oct. 16, 1995) (finding that "[w]here the misstatements are alleged to have occurred over a period of time . . . the pleadings are not required 'to provide the date and time of every communication.'" (quoting *Pollack v. Laidlaw Holdings, Inc.*, No. 90-cv-5788 (DLC), 1995 U.S. Dist. LEXIS 5909, at *26 (S.D.N.Y. May 3, 1995) (holding that it would be "impossible" for plaintiffs to specify the date and time of every communication over a five-year period)), plaintiffs have nonetheless failed to provide sufficient detail to put each defendant on notice of the fraud alleged against them. It is not merely that the time and place of each statement is not clearly stated for each fraudulent claim. Plaintiffs consistently fail to detail why certain misrepresentations are fraudulent and fail to allege facts giving rise to a "strong inference" of fraudulent intent. In some cases, plaintiffs do not even identify the allegedly fraudulent acts or statements at all. Because the allegations must be analyzed with respect to each defendant, see *DiVittorio*, 822 F.2d at 1247, the Court examines each in turn, with the exception of the Bornn defendants, over whom this Court has already determined that it lacks personal jurisdiction.

1. Calhoun

The focus of plaintiffs' allegations is on Calhoun. First, plaintiffs allege that Calhoun "persuaded Stair that the dissolution [of AVE1] was insignificant" and represented to Stair that it was merely "dissolved for inactivity" in 1997 when, in fact, it had been administratively dissolved for failure to comply with its tax obligations in 1993. (Compl. ¶ 16.) However, plaintiffs do not specify when and where this confrontation took place or set forth sufficient facts that give rise to a strong inference of fraudulent intent. The complaint further alleges that Calhoun, "unbeknownst to and without the authorization of Stair and other shareholders of AVE1, caused a Certificate of

Incorporation of [AVE2] to be filed with the Secretary of State of the State of New York." (Compl. ¶ 17.) He allegedly later represented to Stair (1) that forming AVE2 was a legally acceptable alternative to reinstatement via satisfaction of AVE1's delinquent franchise taxes, (2) that doing so would be less complicated and costly, and (3) that AVE2 would be, in all respects, the successor in interest to AVE1. (Compl. ¶ 20.) The complaint again fails to allege, however, when and where these statements were made, why these statements are fraudulent, and any facts giving rise to a strong inference of fraudulent intent, as required by Rule 9(b). Moreover, the complaint simultaneously alleges that Calhoun represented to Stair, at some unspecified time (thus the sequence of the misrepresentations is unclear), that (1) AVE1 was not dissolved for failure to pay taxes, but that (2) the formation of AVE2 would be a better alternative than reinstatement of AVE1's delinquent franchise taxes. Under these facts, it is impossible to determine the nature of the fraud Calhoun is alleged to have committed, much less the possible motivation of Calhoun in making these statements. Though plaintiffs allege that the basis for forming AVE2 was false, plaintiffs have not alleged that Calhoun knew the statement to be false, that he had motive to make such a false representation, or that strong circumstantial evidence of conscious misbehavior or recklessness on the part of Calhoun exists. *See Campaniello Imports, Ltd. v. Saporiti Italia S.p.A.*, 117 F.3d 655, 663 (2d Cir. 1997) (finding the allegations to be insufficient to raise strong inference of fraudulent intent, where the allegations were ambiguous in nature and of suspect import).

These deficiencies are even more apparent in plaintiffs' remaining allegations against Calhoun. The complaint alleges that all actions taken by Stair at the November 24, 2001 meeting were made in reliance upon Calhoun's representations, including the representation that forming AVE2 was a legally acceptable alternative to reinstatement via satisfaction of AVE1's delinquent franchise taxes. Again, this allegation is insufficient to withstand Rule 9(b) scrutiny, as discussed *supra*. At the November 2001 meeting, "at the insistence of Defendant Calhoun," Calhoun was given full authority with respect to the Church litigation. (Compl. ¶ 26.) However, a vague and one-word description of Calhoun's "insistence," is insufficient to support an allegation of fraud. Plaintiffs do not allege what misrepresentations Calhoun made at that meeting (other than stating that AVE2 was a legally acceptable alternative to reinstating AVE1), why they were fraudulent, and how they give rise to a strong inference of fraudulent intent.

The same applies to the allegation that Calhoun assisted the transfer of AVE1 and/or AVE2's interest in the Church Litigation to Sirius. (Compl. ¶ 29.) Further, although plaintiffs state that an Operating Agreement for Sirius was executed and describes the contents of that agreement (Compl. ¶¶ 30-31), they do not allege that any actions by Stair were undertaken in reliance on any misrepresentations made at the time of that agreement's execution. In fact, Stair did not execute that agreement and claims that he had no knowledge of it at the time of its execution. (Compl. ¶ 32.) In sum, because all of plaintiffs' allegations with respect to Calhoun fail to sufficiently plead fraud with particularity, the Court grants the Sirius defendants' motion to dismiss the fraud claim against Calhoun.

### 2. Hanrahan

Plaintiffs allege that Stair met with defendants Calhoun and Hanrahan at the November 2001 meeting of the Board of Directors of AVE2. (Compl. ¶ 21.) Hanrahan allegedly "support[ed]" granting Calhoun full authority with respect to the Church litigation. (Compl. ¶ 26.) Also, Hanrahan, with Calhoun and the Bornn defendants, "caused the transfer of AVE1's and/or AVE2's interest in the Church litigation and in the Property to Sirius." (Compl. ¶ 29.) Hanrahan is further alleged to be a member of Sirius, but there is no specification as to how any actions taken in his capacity as a member of Sirius may have been fraudulent. Finally, Hanrahan was also engaged in negotiations with T-Rex in establishing T-Rex SJ. (Compl. ¶ 33.) These are the only allegations made with respect to Hanrahan and are clearly lacking in particularly. No actual statements or acts of concealment are alleged. Hanrahan's presence at the November 2001 meeting is certainly not enough to sustain a claim of fraud against him. Any vague reference to his "support" of acts taken by Calhoun, without more, is wholly conclusory. Moreover, listing acts in which he is alleged to have participated, such as the negotiations with T-Rex, is insufficient under Rule 9(b), which requires allegations as to why the misrepresentations are fraudulent and that form a basis from a which a strong inference of fraudulent intent can be made. Therefore, because plaintiffs have also failed to sufficiently plead fraud against defendant Hanrahan, Count III is dismissed with respect to this defendant.

### 3. Gilbert and Parella

The complaint alleges the same bare facts against defendants Gilbert and Parella. Both are alleged to be members of Sirius, who acted in concert with Calhoun. (Compl. ¶¶ 30, 46.) Both are also alleged to have participated in the negotiations with T-Rex to obtain financing for the Project. (Compl. ¶ 33.) Plaintiffs do not allege any specific misrepresentations or omissions made by Gilbert and Parella that may have been fraudulent. Because plaintiffs' conclusory allegations that Gilbert and Parella acted in concert with other defendants is insufficient to sustain a claim of fraud, the Court dismisses Count III as to Gilbert and Parella. *See Toussaint v. JJ Weiser & Co.*, No. 04-CV-2592 (MBM), 2005 U.S. Dist. LEXIS 2133, at *32 (S.D.N.Y. Feb. 9, 2005) ("To base a general allegation of fraud on allegations that themselves rest 'on information and belief' without any factual support or source does not satisfy Rule 9(b).")

In sum, after a careful review of plaintiffs' complaint, the Court finds that plaintiffs have failed to plead fraud with sufficient particularity against Calhoun, Hanrahan, Gilbert, and Parella, that is necessary to satisfy Rule 9(b). However, because the plaintiffs may be able to remedy this pleading defect, the Court will provide plaintiffs with an opportunity to replead against these defendants. *See Luce v. Edelstein*, 802 F.2d 49, 56 (2d Cir. 1986) ("Complaints dismissed under Rule 9(b) are 'almost always' dismissed with leave to amend.") (quoting 2A J. Moore & J. Lucas Moore's Federal Practice, P 9.03 at 9-34 (2d ed. 1986)); *see also Blaize-Sampeur v. McDowell*, No. 05-CV-4275 (JFB) (ARL), 2006 U.S. Dist. LEXIS 75764, at *9 (E.D.N.Y. Oct. 18, 2006) (outlining standard and granting plaintiffs opportunity to replead to correct pleading defects). The Court cannot conclude that any effort to replead against these defendants will necessarily be futile. Moreover, there is no

other basis, such as bad faith or undue delay, to warrant denial of leave to amend. Accordingly, plaintiffs will be given an opportunity to replead fraud as to defendants Calhoun, Hanrahan, Parella, and Gilbert.

## V. Conclusion

For the reasons stated herein, the Court grants the Bornn defendants' motion to dismiss for lack of personal jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(2).[11] The Court further grants the Sirius defendants' motion to dismiss Count II of the complaint with respect to defendant T-Rex St. John LLC, but denies it with respect to all other defendants. The Court also grants the Sirius defendants' motion to dismiss Count III of the complaint for fraud against defendants Calhoun, Hanrahan, Parella, and Gilbert, for failure to plead fraud with particularity, as required by Fed. R. Civ. P. 9(b).

Plaintiffs have until April 30, 2009 if they wish to file an Amended Complaint with additional allegations of fraud against defendants Calhoun, Hanrahan, Parella, and Gilbert.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: March 23, 2009
Central Islip, NY

\* \* \*

The attorneys for plaintiffs are Marshall B. Bellovin, Susan Schneiderman, and Kira Tsiring of Ballon, Stoll, Bader & Nadler, P.C. 729 7th Ave., 17th Floor, New York, NY 10019. The attorneys for the Sirius defendants are Derek Adam McNally and James W. Kennedy, Kennedy Johnson Gallagher, LLC, 99 Wall Street, 15th Floor, New York, NY 10005. The attorney for the Bornn defendants is Anastasios Tonorezos, Wilson Elser, Moskowitz, Edelman & Dicker LLP, 150 East 42nd Street, New York, NY 10017.

---

[11] The Court recognizes that, in dismissing for lack of personal jurisdiction against the Bornn defendants, it has the authority to transfer the case against those defendants, rather than dismiss. However, plaintiffs have not requested transfer in the alternative and, in any event, the Court does not believe transfer (as opposed to dismissal) would be in the interest of justice under the circumstances of this case. The Court is unaware of any prejudice that would result to the plaintiffs from dismissal, such as a statute of limitations issue, and plaintiffs can re-file in a district with personal jurisdiction over the Bornn defendants in an expeditious fashion, if they wish to do so. *See Pancoast v. Lee*, No. 07 Civ. 5059, 2009 WL 76502, at \*1 (2d Cir. Jan. 13, 2009) ("The district court correctly determined that it lacked personal jurisdiction over the case. Dismissing on this ground, the court stated that it 'need not reach the questions regarding venue' and suggested that the issue was moot. From this, it is unclear whether the district court realized its authority, notwithstanding the absence of personal jurisdiction, to transfer the case pursuant to § 1406(a) if the interests of justice so require. Given that both sides requested a transfer, albeit briefly and in the alternative, we remand for the district court to consider whether one would serve the interests of justice in light of the relevant circumstances.").